50 F.3d 10
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eva L. COOK, Widow of Henry Cook, Petitioner,
v.
CONSOLIDATION COAL COMPANY; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 94-3197.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1995.
 
 Before: GUY, BOGGS, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Eva Cook, the widow of minor Henry Cook, appeals from the denial of her claim for black lung benefits.[1] An administrative law judge (ALJ) had determined that neither the miner's disability nor death was due to pneumoconiosis. The Benefits Review Board affirmed that decision.
 
 
 2
 Our review of the record convinces us that substantial evidence supports the decision of the Board, and we affirm.
 
 I.
 
 3
 Very little recitation of the historical facts is necessary since the employer conceded the presence of occupational pneumoconiosis arising out of coal mine employment.
 
 
 4
 It also was conceded that decedent was totally disabled from the performance of his usual coal mine work and from the performance of comparable gainful employment. Thus, to prevail, the employer had to prove that the miner's disability or death was not caused in whole or part by pneumoconiosis. In other words, the employer had to rebut, pursuant to 20 C.F.R. Sec. 727.203(b)(3).[2]
 
 
 5
 This is the type of issue that is generally resolved on the basis of medical testimony, and, as would be expected, there was medical testimony offered by both sides.
 
 
 6
 The employer relied primarily on the opinions of Drs. Kleinerman, Fino and Kress. Dr. Kleinerman is board-certified in anatomical and clinical pathology. Dr. Fino also is board-certified in his specialty, which is internal medicine with a sub-specialty of pulmonary diseases. Dr. Kress is a pulmonary specialist, whose practice is limited to the evaluation of industrial pulmonary disease.[3] These doctors reviewed all of decedent's medical records as well as the autopsy report and the testimony of family witnesses. The medical records included x-rays and ventilatory and blood gas studies.
 
 
 7
 All three doctors concluded that the miner's death was caused by cardiac dysrhythmia associated with severe coronary atherosclerosis, cardiac hypertrophy, and a prior myocardial infarction. The doctors noted the decedent was playing golf when he died.
 
 
 8
 The ALJ weighed these opinions and testimony against that offered on behalf of the claimant. Claimant's evidence consisted primarily of reports from Drs. Rasmussen and Halka. Dr. Halka, who performed the autopsy, found severe fibrosilicosis and panacinar emphysema. Dr. Halka concluded, however, that the miner's death was due to cardiac dysrhythmia secondary to severe atherosclerosis. Dr. Rasmussen opined that the clinical data was non-conclusive and found there was no valid laboratory data to judge the miner's respiratory functional status prior to his death. This testimony was marginally helpful to the claimant at best. Dr. Rasmussen, who was director of the Appalachian Pulmonary Laboratory, also testified, however, that "noted authorities" believed there was a relationship between emphysema and coal miner's pneumoconiosis.
 
 
 9
 One other physician involved was Dr. Sauder, who was the decedent's treating physician prior to death. Dr. Sauder's office notes from 1971 to 1978 reflect no lung problems, no lung complaints, and made no diagnosis of any lung disease.
 
 II.
 
 10
 In Harlan Bell Coal Co. v. Lemar, 904 F.2d 1042 (6th Cir.1990), we reiterated what we earlier had said relative to reviewing decisions of the Benefits Review Board in black lung cases. Quoting from Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986), we stated:
 
 
 11
 This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations.
 
 
 12
 Harlan Bell Coal, 904 F.2d at 1045.
 
 
 13
 Under the facts of this case, what we actually review are the determinations made by the ALJ. Here, the ALJ had to resolve conflicting medical testimony. Under our limited review, we may not overturn the resolution made by the ALJ if supported by substantial evidence. This is true even if, viewing the same evidence, we would have resolved the conflict differently.
 
 
 14
 There can be little debate that the respondents presented substantial evidence as part of their rebuttal case. Three eminent specialists reached the conclusion that it was heart problems and not lung problems that caused the disability and death of the miner.
 
 
 15
 Claimant would blunt this strong medical testimony by arguing that Dr. Halka's opinion should be given more weight than those offered in rebuttal. There are two problems with this argument. First, although Dr. Halka's autopsy revealed emphysema, it does not indicate it was a "substantially contributing cause" to the miner's death. See Brown v. Rock Creek Mining Co., 996 F.2d 812, 817 (6th Cir.1993) (substantially contributing cause is one that hastens death in any way). Although Dr. Rasmussen did point out that there can be a relationship between pneumoconiosis and emphysema, he could not say such was the case here.
 
 
 16
 Second, although the pathologist conducting an autopsy may be considered a "treating" physician under the general rule that the opinion of a treating physician is entitled to greater weight, it is not always the case that greater deference will be accorded. It depends on the nature of the opinion offered. In some instances the pathologist will benefit from the firsthand observations made while conducting the gross exam. Here, however, the analysis of lung tissue is largely a microscopic examination, and a later examination of the same tissue conducted by one with greater qualifications is entitled to equal or greater weight.
 
 
 17
 More importantly, however, the doctors who testified for the respondents do not dispute the autopsy findings, so there is no need to resolve a conflict by the application of a judicially-created rule. Simply put, the claimant has no medical testimony that the decedent was disabled or died from lung disease. Although arguably the ALJ could have drawn the inference that respiratory disease "contributed" to the miner's death, he was, on the state of this record, not required to do so.
 
 
 18
 Since substantial evidence supports the decision made by the ALJ, we are compelled to uphold his decision.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The claim was initially filed by the miner before his death
 
 
 [2]
 20 C.F.R. Sec. 727.203(b)(3) provides that the presumption afforded the miner shall be rebutted if: "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment...."
 
 
 [3]
 This case was remanded in 1989 by the Benefits Review Board on legal grounds. On remand, the employer sought and was granted permission to submit new medical evidence. It was at this time that the opinions of Drs. Kleinerman, Fino and Kress were submitted. Claimant submitted no additional medical evidence